14 S.W.3d 15 (2000)
COMMONWEALTH of Kentucky NATURAL RESOURCES AND ENVIRONMENTAL PROTECTION CABINET, Appellant,
v.
Sherman NEACE, Appellee.
No. 1998-SC-0742-DG.
Supreme Court of Kentucky.
February 24, 2000.
Rehearing Denied April 20, 2000.
*17 James D. Brannen, Randall S. Royer, Office of Legal Services, Frankfort, for appellant.
Shelby C. Kinkead, Jr., Kinkead & Stilz, Lexington, for appellee.
*16 WINTERSHEIMER, Justice.
This appeal is from an opinion of the Court of Appeals vacating a judgment of the Franklin Circuit Court which had ordered Sherman Neace to pay $844,050 in penalties and fines assessed by the Commonwealth of Kentucky, Natural Resources and Environmental Protection Cabinet against N.W. Coal, Inc. The Court of Appeals remanded the case to the circuit court in order to determine whether Neace was still in control of the corporation at the time the final orders of the Secretary were entered.
The questions presented are whether KRS 350.135 requires Cabinet approval of permit transfer by sale; whether KRS 350.990(9) supersedes the common law remedy of corporate veil piercing, and whether remand to circuit court is necessary to determine the individual liability of Neace.
N.W. Coal, Inc. had a permit to mine 49.11 acres and 113.10 acres in Leslie County. N.W. was incorporated in Kentucky by Neace to engage in coal mining. He was the sole director, officer and shareholder. Neace entered into a purchase agreement with Gulf Southland Corporation in 1989 for the sale of N.W. Gulf purchased all stock and corporate assets of N.W. and Neace agreed to resign as a director and officer of N.W. Gulf also agreed to indemnify and hold Neace harmless for any and all obligations, debts, penalties or assessments of any nature whatsoever, arising from his ownership, operation, employment by or association within N.W., regardless of whether such obligation has or will occur. Following the execution of the agreement, N.W. filed a notification of change in corporate permitee and/or corporate name form with the Cabinet. The form was returned to Gulf due to several deficiencies. No application for permit transfer was ever filed pursuant to KRS 350.135.
Beginning on November 9, 1989, the Cabinet filed a series of three complaints against N.W. seeking to recover payment of numerous civil penalties against it. The complaint was later amended to include Neace individually. The Cabinet sought summary judgment asserting that Neace was personally liable for the penalties under the common law doctrine of piercing the corporate veil and under KRS 350.990 because the transfer was not completed and that Neace did not comply with KRS 350.135 in transferring the permits.
The circuit court granted summary judgment in favor of the Cabinet and ordered Neace to pay $844,050 in civil penalties as a result of 14 orders issued by the Cabinet between May 2, 1989 and July 17, 1990. The trial judge held that Neace was the alter-ego of N.W. and that it was proper *18 to pierce the corporate veil pursuant to White v. Winchester Land Development Corp., Ky.App., 584 S.W.2d 56 (1979). The Court of Appeals vacated the summary judgment and held that common law veil piercing had been superseded by statute. The panel also determined that the sale of N.W. would not constitute a transfer of its permits because N.W., the original permitee, would continue to hold them. The case was remanded for further proceedings to determine whether Neace was in control of N.W. when the final orders of the Secretary were entered. This Court accepted discretionary review.

I. Cabinet Approval
A careful review of the statutory law and regulations applicable to the facts presented in this case causes us to conclude that KRS 350.135 requires Cabinet approval of permit transfers by sale. KRS 350.135(5) sets out the circumstances under which the Cabinet shall approve transfers. Both Neace and Gulf Southland were required to file an application to transfer the permit. Gulf Southland had to post a satisfactory bond before the bond of Neace would be released. Such rules require operators to comply with transfer procedures which allow the Commonwealth the opportunity to confirm continuous bond coverage.
In addition, the statute closes a loophole by preventing the issuance of new permits to those who have evaded direct enforcement or otherwise have allowed operations under their control to leave unabated violations. KRS 350.135 prohibits a transfer to any person ineligible to obtain a new permit.
KRS 350.135(1) states in pertinent part as follows:
No surface coal mining permit issued pursuant to this chapter shall be transferred by sale, assignment, lease or otherwise except upon the written approval by the Cabinet of a joint application submitted by both the transferor and the transferee ... The Cabinet shall not approve transfer of a surface coal mining permit to any person who would be ineligible to receive a new permit under this chapter.
405 KAR 8:001, § 1(132) states as follows:
Transfer, assignment or sale of permit rights means a change in ownership or other effective control over the rights to conduct surface coal mining operations under a permit issued by the Cabinet.
This section was codified as 405 KAR 8:001 § 1(126) at the time of the alleged sale of N.W. to Gulf Southland.
The transfer statute and its complementary regulation are necessary elements of the regulatory system enacted by the General Assembly to ensure continuity of bond security and to prevent any circumvention of the "permit block" statute. The Cabinet cannot approve transfer of a permit to any person who would be ineligible to receive a new permit.

II. Veil Piercing
Clearly, statutory liability under KRS 350.990(9) and common law piercing liability complement each other. Morgan v. O'Neil, Ky., 652 S.W.2d 83 (1983), stands for the proposition that "shareholders may be liable for a corporate debt either by piercing the corporate veil or by statutory authorization." Natural Resources and Environmental Protection Cabinet v. Williams, Ky., 768 S.W.2d 47 (1989), provides for the imposition of liability pursuant to KRS 350.990(9). Williams recognizes that both remedies are available and does not in any way indicate that the statutory remedy is the exclusive method which the Cabinet must follow.
It should be observed that the statute does not include shareholders but rather addresses the liability of officers, directors and agents of the corporation. In contrast, common law piercing specifically rests on shareholder liability. Cf. Morgan, supra, at 85.
*19 KRS 350.990(9) does not repeal the common law. Consequently, such a remedy is still available to the Cabinet. Thus, the Court of Appeals was in error when it in effect imposed a doctrine of statutory exclusivity on the Cabinet. Any repeal of common law must be clear and expressed. Benjamin v. Goff, Ky., 314 Ky. 639, 236 S.W.2d 905 (1951). Section 233 of the Kentucky Constitution provides that the common law remains in effect until repealed or clearly altered by a specific legislative act. Nothing in our analysis of the case before us limits the judicial branch in its interpretation and development of the mutable body of the common law to meet the demands of changing times. Cf. City of Louisville v. Chapman, Ky., 413 S.W.2d 74 (1967).
The authority cited by the Court of Appeals, Triple M Mining Company, Inc. v. NREPC, Ky.App., 906 S.W.2d 364 (1995), did not directly hold that the common law doctrine is superseded by the statute. The holding in Triple M Mining, supra, was that the circuit court had based its decision in that case on KRS 350.990(9) and not on common law piercing as the owner of the company contended. The case does not reach the issue of whether common law piercing is superseded by a statute. We find no authority to support the position of Neace in such regard. The circuit court was correct when it found that the purported sale of N.W. by Neace was a sham that subverted public policy and held Neace liable for the regulatory obligations of N.W. under the common law doctrine of corporate veil piercing. There is an adequate basis for the imposition of individual liability either under the common law theory used by the trial judge or by the statute. KRS 350.990(9).

III. Remand Unnecessary
Here, both parties submitted motions for summary judgment. The circuit judge determined that the purported sale of N.W. was a sham for regulatory purposes and that the sale subverted public policy. The Court of Appeals directed a remand based on its observation that the parties disagreed as to who controlled N.W. at the time the final orders were entered. This lawsuit is not between the parties of Neace and Gulf, but rather between the Cabinet and Neace.
The body of law relating to the application of Rule 56.03, et seq., as to summary judgment has been collected in Steelvest, Inc. v. Scansteel Service Center, Inc., Ky., 807 S.W.2d 476 (1991). The Kentucky standards for summary judgment were ably expressed in Paintsville Hospital Co. v. Rose, Ky., 683 S.W.2d 255 (1985). The basic grounds remain the same. Summary judgment will apply if 1) there is no genuine issue as to any material fact, and 2) the moving party is entitled to judgment as a matter of law. Such a procedure is not a substitute for trial, but the circuit judge is required to examine the evidentiary material, not to decide any issue of fact, but to discover if a real issue exists. All doubts must be resolved in favor of the party opposing the motion. Here, the dispute was between the Cabinet and Neace. There is no genuine issue of any kind here.
The record provides overwhelming evidence that Neace was individually liable pursuant to the statute. He was the sole officer, director and shareholder of the corporation. He had notice of unabated violations and the orders of the Cabinet. He took no steps to see that the corporation complied with the orders. Neace had even signed a permit revision as President of N.W. in September of 1989, six months after the alleged sale. The circuit judge reviewed the administrative record and took additional proof regarding the question of individual liability. The circuit judge gave Neace every opportunity to respond to the allegations of the Cabinet. Consequently, based on the record and the law, it is clear that Neace should be held alternatively liable under KRS 350.990(9) in view of his complicity in the failure of *20 the corporation to comply with the orders of the Cabinet. See Triple M Mining, supra, and Williams, supra.
The remand directed by the Court of Appeals is unnecessary. An appellate court may affirm a trial court under an alternate theory not relied upon by the trial court. Cf. Haddad v. Louisville Gas & Electric Co., Ky., 449 S.W.2d 916 (1970).
KRS 350.135 requires Cabinet approval of permit transfers by sale. KRS 350.990(9) does not supersede the common law remedy of corporate veil piercing. Both provide an adequate basis for the imposition of individual liability. We conclude that the circuit court was correct in holding that Neace controlled N.W. at all times and thereby subverted public policy by his conduct.
The opinion of the Court of Appeals is reversed and the judgment of the circuit court is reinstated.
LAMBERT, C.J., GRAVES, JOHNSTONE, STUMBO and WINTERSHEIMER, JJ., concur.
KELLER, J., files a separate opinion concurring in part and dissenting in part in which COOPER, J., joins.
KELLER, Justice, concurring in part and dissenting in part.
I concur with the majority's holding that KRS 350.990(9) did not supersede the common law doctrine of piercing the corporate veil but merely provided an additional basis for imposing individual liability for penalties assessed by the Cabinet. Accordingly, I would reverse the decision of the Court of Appeals to the extent it held otherwise.
I respectfully dissent, however, from the majority's conclusion that the trial court correctly entered summary judgment for the Cabinet and that further remand is unnecessary. In my opinion, genuine issues of material fact inconsistent with summary judgment remain with regard to either theory of liability discussed in the majority opinion. While I agree with the majority that Neace could be liable under either the common law doctrine of piercing the corporate veil or under KRS 350.990(9), I disagree with the majority's conclusion that all factual issues have already been resolved.
Without an evidentiary hearing, the circuit court summarily determined from the record that Neace was the alter ego of N.W. and, therefore, liable under the doctrine of piercing the corporate veil. Neace claimed that he had sold N.W. to Gulf and Gulf was in control of N.W. at the time the final orders were issued by the Cabinet. To impose individual liability on Neace under the doctrine of piercing the corporate veil for refusing to comply with the Cabinets' orders, the Cabinet was required to show that Neace was still in control of N.W. at the time the final orders were entered. If Neace had indeed relinquished control of N.W. to Gulf prior to the entry of the Cabinet's final orders, the doctrine of piercing the corporate veil based on Neace's past control of N.W. would not be a basis for imposing individual liability on Neace since he would not have been in control of N.W. at the relevant time. I agree with the Court of Appeals that there was a genuine issue as to this material fact and that a summary judgment was not appropriate.[1] In my opinion, therefore, we must remand for a resolution of this issue if the Cabinet seeks to impose liability based on the doctrine of piercing the corporate veil.
The majority correctly states that we may affirm a trial court under an alternate theory not relied upon by the trial court. "Consequently," the majority holds, "based on the record and the law, it is clear that Neace should be held alternatively liable under KRS 350.990(9) in view of his complicity in the failure of the corporation to comply with the orders of the cabinet." I disagree.
*21 As pointed out by the majority, KRS 350.135(1) requires Cabinet approval for transfer of a permit and "[t]ransfer... of permit rights means a change in ownership or other effective control over the rights to conduct surface coal mining operations under a permit issued by the Cabinet."[2] Accordingly, any sale of the total shares or a sufficient number of shares to transfer the controlling interest in a corporate permittee must be approved by the Cabinet. Although not mentioned by the majority, the corporate transferor remains liable for any penalties prior the Cabinet's approval: "All rights and liabilities under the permit shall pass to the transferee upon written approval of the transfer by the cabinet, except that the transferor shall remain liable for any civil penalties resulting from violations occurring prior to the date of approval of the transfer."[3] While cited but not set forth in the majority opinion, KRS 350.990(9) under certain conditions does impose individual liability on directors, officers and agents of a corporate permittee:
When a corporate permittee violates any provision of this chapter or administrative regulation issue pursuant thereto or fails or refuses to comply with any final order issued by the secretary, any director, officer, or agent of the corporation who willfully and knowingly authorized, ordered, or carried out the violation, failure or refusal shall be subject to the same civil penalties, fines, and imprisonment as may be imposed upon a person pursuant to this section.[4]
Construing these statutory provisions together, it is clear that individual liability may be imposed only upon a director, officer or agent of a corporate permittee who, prior to the Cabinet's approval of a transfer, willfully and knowingly authorizes, orders or carries out (1) a violation of any provision of KRS Chapter 350 or administrative regulation issued pursuant thereto or (2) a failure or refusal to comply with any final order issued by the Secretary.
The Cabinet imposed penalties for N.W.'s failure or refusal to comply with final orders and must, therefore, show that Neace was a director, officer or agent of N.W. at the time of the issuance of the orders and he willfully and knowingly failed or refused to comply with the orders. Neace claims that, by virtue of the sale to Gulf, he had completely relinquished control of and, as a result, any position with N.W. at the time of the final orders. His control of and relationship with N.W. at the time of the Cabinet's orders were therefore material disputed facts. Accordingly, liability cannot be properly imposed upon Neace as a matter of law on the alternative theory suggested by the majority.
For the above reasons, I would remand this case to the circuit court for further proceedings.
COOPER, J., joins this dissent.
NOTES
[1] Steelvest, Inc. v. Scansteel Service Center, Inc., Ky. 807 S.W.2d 476 (1991).
[2] 405 KAR 8:001, § 1(132) (emphasis added).
[3] KRS 350.135(1).
[4] KRS 350.990(9) (emphasis added).