# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: NOVEMBER 26, 2008
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2007-SC-000189-MR

HERSHALL NALL, SR.          APPELLANT

ON APPEAL FROM HARDIN CIRCUIT COURT
V.        HONORABLE KELLY M. EASTON, JUDGE
NO. 05-CR-00361

COMMONWEALTH OF KENTUCKY          APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**AFFIRMING**

Hershall Nall appeals from the judgment of conviction and sentence entered after a circuit court jury convicted him of first-degree sexual abuse, ten counts of first-degree rape, and eleven counts of incest.

Nall's appeal challenges the sufficiency of the evidence to support these convictions, and he argues that impermissible hearsay and evidence of uncharged crimes tainted the trial proceeding. He further asserts that the jury instructions did not require a unanimous verdict. He claims that he was prejudiced by not obtaining a bill of particulars. He argues he should have been allowed to call the prosecutor to testify about his interview of a witness. Nall argues the prosecutor impermissibly commented on the consequences of the jury's verdict. Finally, he contends that the jury verdict must be reversed

because cumulative error at trial contributed to his conviction. Upon review of his trial, we affirm Nall's convictions.

## I. EVIDENCE FROM THE COMPLAINING WITNESS.

The alleged victim was Nall's daughter, P.N.A., who was an adult at the time of trial. She testified at trial that her father had repeatedly raped and sexually abused her beginning when she was five years old and continuing until she left her parents' household on the night of her high school graduation. So the evidence at trial consisted of descriptions of events that allegedly occurred decades before the trial.

P.N.A. testified that her mother did not believe her when, as a young child, she reported the abuse to her. P.N.A. claimed that she did not speak of the abuse again as a child until telling some high school friends, one of whom reported it to a high school counselor. The counselor then spoke to P.N.A. about the allegations. But after P.N.A. and her three younger sisters were removed from the family home for only one day as a result of that disclosure, they were returned when P.N.A.'s sisters refuted all claims of abuse. The sisters said then that P.N.A. fabricated the allegations based on having read a "true crime" magazine.

P.N.A. alleged that the abuse took place throughout her childhood and, since the family moved frequently, at several different residences. P.N.A. testified that the abuse, most often involving vaginal intercourse, occurred whenever her mother was out of the house. She testified that her father would usually call her to his bedroom. However, she testified that the abuse also

occurred once in the basement of one home, and in the barn at their last residence. She testified that as she got older she often tried to fight off her father's advances and at those times he would send her out and tell her to send in one of her three younger sisters. P.N.A.'s three sisters testified at trial and denied that their father sexually abused them; they testified that they never saw their father act inappropriately in a sexual manner toward P.N.A.

## II. EVIDENCE OF PRIOR BAD ACTS NOT IMPROPERLY ADMITTED.

Nall's first allegation of error is that the trial court allowed improper evidence of other crimes, wrongs or acts under Kentucky Rule of Evidence (KRE) 404(b). He first argues that the court allowed the introduction of some KRE 404(b) evidence despite the Commonwealth's failure to disclose it under the notification requirement of KRE 404(c). We conclude, however, that the evidence Nall complains of was not KRE 404(b) evidence.

Testimony was admitted from a woman, Lisa Campbell, who had been a friend of the Nall girls. She testified that once when she was spending the night with them, their father summoned one of P.N.A.'s sisters to go with him out to the barn to feed the animals. She testified that when the sister returned, she was upset and crying. The witness testified that she did not see what happened in the barn and did not know why she was crying.

The Commonwealth had no responsibility to report this as KRE 404(b) evidence. The incident described does not bring up a prior crime, wrong, or act by the defendant as described in the Rule. Although it is not necessary that the KRE 404(b) evidence consist of a crime, it must relate to some wrong or act

3

from which the person offering the statement seeks to show action in conformity with it at trial as proof of character. As pointed out in cross-examination, there was no proof that Nall had done anything wrong on the evening testified about, and the incident was not therefore usable as evidence of character. The Commonwealth asserted at trial that the evidence was relevant to show that Nall was capable of being alone with the children in the barn. Since we conclude that it was reasonable that the trial court and the Commonwealth did not regard this as KRE 404(b) testimony, we agree that notice was not required for this testimony; and it was properly allowed by the trial court.

Next, Nall argues that the other bad acts evidence was improperly admitted because it did not meet the established requirement that KRE 404(b) evidence involving sexual offenses be so identical as to constitute a signature offense. KRE 404(b)(1) provides that evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show conformity therewith, but may be admitted if offered for another valid purpose. Other purposes noted in the rule include "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident," and the list is illustrative rather than exhaustive.[1] Evidence of prior sexual acts may also be used to show a "modus operandi." But when offered for that purpose, we have imposed the further requirement that the facts surrounding them be so strikingly similar as to show that the acts were committed by the

---

[1] Dickerson v. Commonwealth, 174 S.W.3d 451, 468 (Ky. 2005).

same person and the acts were accompanied by the same *mens rea.*[2] Because evidence of a defendant's prior bad acts is highly prejudicial, we construe KRE 404(b) as exclusionary in nature.[3]

The KRE 404(b) evidence introduced by the Commonwealth consisted of two incidents alleged by female relatives of Nall occurring in his bedroom, and a third incident involving Nall's son. We first assess the evidence from the two females. A pertinent analysis of other bad acts evidence includes "[w]hether there exist common facts between the acts . . . not whether there was common criminality."[4] The first of these witnesses was T.T., Nall's niece. She testified that she was at least 8 or 9 when she visited the Nalls with her family during a summer vacation. She testified that Nall was the only adult in the house since the other adults had gone to play bingo. Nall was supposed to take the children roller skating. However, he told the children that they might not get to go skating, and that he wanted to talk to them. He asked T.T. to come into his bedroom. He told her to lie on the bed and she did. T.T. passed out. When she woke, she testified that she was hurting and had blood "down there," as if someone had stuck something inside her. One of P.N.A.'s sisters told her to use one of their pads for the bleeding. T.T. said the sister also told her not to worry about it and indicated that this had happened before. She said they did go skating, and she remembered hurting for most of the night.

---

[2] Martin v. Commonwealth, 170 S.W.3d 374, 380 (Ky. 2005).

[3] Commonwealth v. Buford, 197 S.W.3d 66, 70 (Ky. 2006).

[4] Martin, 170 S.W.3d at 380.

The second female witness was L.T., who testified that Nall was her father's first cousin. She was 44 at the time of trial. She testified that when she was eight to ten years old she went to the Nalls' house. She testified that no other adults were in the house, and Mrs. Nall had gone to play bingo. She testified that Nall invited her into the bedroom because he wanted to show her something on the television. She said that the other children were in the front room. Once in the bedroom, she testified that Nall tossed her onto the bed a few times and began wrestling around with her. She testified that Nall pushed her dress up and was tickling her, and then went on to try to pull her underwear down. Although he was still tickling her, she knew that he should not be pulling on her underwear; and she felt he was tickling her farther down than he should have. He also rubbed her chest. She said she did not feel right or safe and told him to stop. She said she started kicking him, as well. Finally when she threatened to tell her father, Nall stopped.

We find these events to have a noteworthy similarity. In both cases, the witnesses were young girls of a similar age, which was also an age that matched that of the victim during her abuse. These females were relatives of Nall. Nall was able to isolate them at his house when his wife and all other adults had gone out for the evening.[5] In each case, he brought them into his bedroom, which was a place that he also took P.N.A. For T.T. as well as P.N.A.,

---

[5] Nall alleges the fact that he was alone with the victims could not be a factor because this will always be the case. Sexual crimes may be perpetrated with others present or nearby. *See, e.g.* Commonwealth v. English, 993 S.W.2d 941 (Ky. 1999) (each incident occurred while the defendant's wife was also in the home).

the abuse included vaginal penetration. We do not believe that the incident with L.T. was required to be excluded because she did not experience that degree of abuse from Nall. It was implicit in her testimony that Nall would have continued his mistreatment but for her threat to tell her father. There is sufficient similarity in the episodes to be striking, and no requirement that the episodes reflect the same consequences for each child. Therefore, we find no abuse of discretion in the court's admission of the testimony of prior bad acts from these two witnesses.

We next consider separately the allegation as to H.N., son of Nall. Nall points out differences in the evidence from H.N. since he is male, and the act described was oral sex. The trial court found sufficient similarity with P.N.A.'s allegations because both were Nall's biological children and because P.N.A. alleged Nall at times forced her to perform oral sex before vaginal intercourse.

H.N. was a hostile witness who refused to testify. Although he took the stand, he would not testify to what Nall did. He was finally impeached with evidence that he had testified once before in a separate trial that his father abused him. No details came out about the abuse from H.N., although the Commonwealth's Attorney referred to H.N.'s earlier testimony in closing argument, and in so doing provided details from it to assert a pattern of abuse.

We believe this incident does not bear the striking similarity of the other incidents necessary to be admitted as a prior bad act. Here, the incident involved only the same act perpetrated on the victim, P.N.A., and the same familial relationship, but no other striking similarities. Of course, there was

7

very little testimony from which to determine factual similarities. Although we find error in its admission, we believe nevertheless that it was harmless because H.N. provided no details and essentially provided no testimony against his father other than a begrudging acknowledgment that he had testified against him before.[6]

There is no reversible error in the evidentiary ruling of a court unless it is determined that a substantial right of the party is affected. KRE 103(a). An error "is harmless if there is no reasonable possibility that it contributed to the conviction."[7] Foremost, there was extensive evidence provided by the victim, as well as evidence from P.N.A.'s cousin Linda Louden that she observed Nall scuffling with P.N.A. in the barn and that he had his pants down. Additionally, there was ample other bad acts evidence that did bear a striking similarity. Given all of the above, we cannot say that the limited information provided through H.N. as a witness was prejudicial to Nall's substantial rights. So we regard the admission of this testimony as harmless error.

## III. NO IMPROPER HEARSAY EVIDENCE ADMITTED.

Nall argues that testimony from P.N.A.'s high school counselor was hearsay.[8] P.N.A.'s counselor, Ms. Thro, testified that one of P.N.A.'s high school classmates, Debbie Lyman, came to her and told her she believed P.N.A. was being abused by a family member. The counselor then spoke with P.N.A.

---

[6] In fact, Nall, in his Brief to this Court, acknowledges that: "As to [H.N.'s] testimony, there was little that was actually admitted, given his reluctance to testify."

[7] Anderson v. Commonwealth, 231 S.W.3d 117, 122 (Ky. 2007).

8

about what was happening in her home; and the counselor contacted social services, which began an investigation.

Nall objected to Ms. Thro's repeating statements made by P.N.A.'s friend on the ground of hearsay. The trial court admonished the jury that it could consider the hearsay statements only as they explained actions taken by Ms. Thro and not for the proof of the matter considered.

Nall argues on appeal that the actions taken by Ms. Thro were not an issue in the case. The Commonwealth claims that because of the lapse of time it was important to know that P.N.A. reported the allegations earlier. While we agree with Nall that the actions of Ms. Thro were not an issue, the fact that the allegations came to light earlier was made an issue in the case by Nall's defense. Thus, there was no error in allowing this testimony since it was nonhearsay. Ms. Lyman's statements were not offered for the truth of the matter asserted, but to show that the allegations about the offenses were made at an earlier time. Thus, the trial court correctly allowed it because it fit within the verbal act doctrine, which provides that statements are not hearsay evidence when they are not admitted for the purpose of proving the truth of what was said, but for the purpose of describing the relevant details of what

---

8 Specifically, Nall alleges that the testimony comprised "investigative hearsay." We find this to be a misnomer, since the concept of investigative hearsay derived from an attempt to create a hearsay exception permitting *law enforcement officers* to testify to the results of their investigations. That erroneous basis for introducing hearsay evidence was rejected in a line of cases, starting with <u>Sanborn v. Commonwealth</u>, 754 S.W.2d 534 (Ky. 1988), none of which involved counselors or social workers.

took place.[9] Additionally, we note that the jury was actually admonished not to use the statement for the truth of the matter asserted, and juries are presumed to follow the admonitions given to them from the bench.[10]

On appeal, Nall also argues that Ms. Thro repeated statements from P.N.A. But Nall does not identify any out-of-court statement by P.N.A. that Ms. Thro repeated during her testimony. The Commonwealth's Attorney was careful not to ask Ms. Thro what P.N.A. said. In fact, Ms. Thro testified only that P.N.A. told her what was happening in her home. Although we question the preservation of the alleged error, we will address the allegation of hearsay.

We observe no error in admitting Ms. Thro's testimony regarding any statements P.N.A. made to her, because it was admissible under a hearsay exception. An appellate court may affirm a trial court for a correct result under a theory not relied upon by the trial court.[11] Ms. Thro's testimony was properly admitted to show that P.N.A.'s testimony was not a recent fabrication or the product of improper motive. KRE 801A(a)(2) provides:

> Prior statements of witnesses. A statement is not excluded by the hearsay rule, even though the declarant is available as a witness, if the declarant testifies at the trial or hearing and is examined concerning the statement, with a foundation laid as required by KRE 613, and the statement is:
>
> (2) Consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive[.]

---

[9] Brewer v. Commonwealth, 206 S.W.3d 343, 351 (Ky. 2006) (*citing* Preston v. Commonwealth, 406 S.W.2d 398, 401 (Ky.1966)).

[10] Mills v. Commonwealth, 996 S.W.2d 473, 485 (Ky.1999).

[11] Commonwealth Natural Res. and Envtl. Prot. Cabinet v. Neace, 14 S.W.3d 15, 20 (Ky. 2000).

The theory of the defense was that the declarant, P.N.A., had an improper motive to make these charges as an adult because she was retaliating against her family after a family fight that took place in Texas and because she was trying to get money from her father. Evidence from Ms. Thro that P.N.A. made the same charges as a teenager served to rebut that accusation. Where a witness has been assailed on the ground that the story is a recent fabrication or that she has some motive for testifying falsely, it is permissible to show that she gave a similar account when the motive did not exist, before the effect of such an account could be foreseen, or when the motive or interest would have induced a different statement.[12] P.N.A. testified at trial and was asked about her statements to Ms. Thro.

Nall argues that this was not a proper KRE 801(a)(2) admission because it was introduced in the Commonwealth's case-in-chief, not after the victim's credibility had been attacked as to recent fabrication or improper motive. While it technically may have been out of order, error in the timing of the admission amounts to harmless error for such a statement.[13] P.N.A. was attacked as having an improper motive for testifying against her father, and so any testimony about her statements was admissible under that hearsay exception.

---

[12] Smith v. Commonwealth, 920 S.W.2d 514, 517 (Ky. 1995) (*quoting* Eubank v. Commonwealth, 210 Ky. 150, 275 S.W. 630, 633 (1925)).

[13] Fairrow v. Commonwealth, 175 S.W.3d 601, 606 (Ky. 2005); Reed v. Commonwealth, 738 S.W.2d 818, 821 (Ky. 1987).

## IV. NALL WAIVED OBJECTION TO LACK OF A BILL OF PARTICULARS.

Nall argued that he was not given a requested bill of particulars, which prejudiced his defense because the indictment was too vague for him to prepare a defense to the variety of charges. The Commonwealth correctly asserts that the claim of error is waived by the fact that Nall did not object to the Commonwealth's failure to provide the bill of particulars before trial.[14] Nall's last request for a bill of particulars occurred nine months before the trial commenced when he asked for a continuance of the trial because of the failure to obtain discovery and a bill of particulars from the Commonwealth. The Commonwealth responded that it had informed Nall in open court that "the Commonwealth's response to the Bill of Particulars was basically that there is no additional information other than what has been provided or as set out in the indictment." The trial court granted Nall's request and postponed the trial for nine months. Because Nall made no further pursuit of a bill of particulars, we must conclude that he was satisfied with the response and the postponement of the earlier trial date. Nall waived this claim of error by not pursuing it after the postponement of the initial trial date.

## IV. NO ERROR IN UNANIMOUS VERDICT AND SUFFICIENCY OF THE EVIDENCE.

Nall argues that the jury instructions did not allow for a unanimous verdict because they did not describe the incidents sufficiently to ensure that

---

[14] Hampton v. Commonwealth, 666 S.W.2d 737, 740 (Ky. 1984).

the jury's verdicts conformed to the proof. We find no error in the instructions on this basis. Nall did not make a specific argument below that the instructions did not allow for a unanimous verdict. No claimed error in the giving of instructions can be raised on appeal unless it was preserved by contemporaneous objection.[15] In addition, Nall agreed to the wording of the instructions, particularly the separate designations of the barn and tobacco barn at the Rhudes Creek address, and of the residence at Hawkins Drive and the second residence at Hawkins Drive as a site of some of the counts.

Appellant further argues that the evidence was insufficient to support the convictions and a directed verdict should have been granted. On appellate review, the test of a directed verdict is, if under the evidence as a whole it would be clearly unreasonable for a jury to find guilt, only then is the defendant entitled to a directed verdict of acquittal.[16] We adhere to the principle that proof of the precise dates on which offenses were committed is not required of a child sexual abuse victim where the evidence is "ample to separately identify the various offenses charged."[17] Moreover, we have also affirmed that failure to prove a specific date of an offense is not significant unless time is a "material ingredient of the offense."[18] Here, the evidence with regard to each of the charges was sufficient to show that at least one incident

---

[15] Kentucky Rules of Criminal Procedure (RCr) 9.54(2); Commonwealth v. Duke, 750 S.W.2d 432 (Ky. 1988).

[16] Commonwealth v. Benham, 816 S.W.2d 186, 187 (Ky. 1991).

[17] Hampton, 666 S.W.2d at 740. *See also* Garrett v. Commonwealth, 48 S.W.3d 6, 10 (Ky. 2001).

[18] Stringer v. Commonwealth, 956 S.W.2d 883, 885-86 (Ky. 1997).

of the particular offense occurred within the time period and at the location stated in each instruction. The victim stated that the offenses were ongoing, but she was also able to relate them to different locations and events through her life, such as her appendix operation, the family's moving, and what grades she was attending. We find sufficient evidence on each of the counts. In addition, the indictment set forth sufficient specific facts so that Nall could plead a former conviction in the event a future prosecution for the same offense was ever brought against him.

Finally, Nall complains that forcible compulsion was not shown as to every first-degree rape charge. P.N.A. testified that her father would hit and beat her if she resisted his sexual advances, and also threatened to beat her if she told anyone. Forcible compulsion includes not only physical force but the threat of physical force that places a person in fear of physical injury to the self or to others.[19] P.N.A. testified to fear of beatings and also of her father sending her out and requiring her to send in one of her younger sisters if she did not submit. We believe sufficient forcible compulsion was shown to support the jury's verdict.

Whether the issue is viewed as one of insufficient evidence, or double jeopardy, or denial of a unanimous verdict, when multiple offenses are charged in a single indictment, the Commonwealth must introduce evidence sufficient to prove each offense and to differentiate each count from the others, and the

---

[19] Kentucky Revised Statutes (KRS) 510.010(2).

14

jury must be separately instructed on each charged offense.[20]  Our review of the evidence and the instructions convinces us that the standard was met in this case.

## V. PROSECUTOR AS A WITNESS CLAIM UNPRESERVED FOR REVIEW.

Nall argues that he should have been permitted to call the prosecutor to testify about his interview of a witness because of variance in the statement the prosecutor took from the witness and her testimony at trial.  Nall fails to identify where in the record he made a request to call the prosecutor, nor where the court denied his purported request, and thus has not shown whether the argument on appeal is preserved.  Kentucky Rules of Civil Procedure (CR) 76.12(4)(c)(v) requires a statement at the beginning of each argument in the brief with a reference to the record showing whether the issue was properly preserved for review and, if so, in what manner.  Although Nall cites the testimony of the witness who gave the statement, we find no request in the record to call the prosecutor as a witness at that time.  Thus, he makes no reference to the record that reveals proper preservation.  This is not specific enough to allow us to review this claim of error, and so we do not.  Moreover, the Commonwealth asserts that the witness was impeached using the statement itself.  And we have no basis to conclude that the prosecutor would have attested to anything other than that the statement conformed to what the witness told him.

---

[20] Miller v. Commonwealth, 77 S.W.3d 566, 576 (Ky. 2002).

15

## VI. <u>NO ERROR IN CLOSING ARGUMENT</u>.

Finally, Nall argues that the prosecutor impermissibly commented on the consequences of a jury verdict in closing argument. The Commonwealth notes that this allegation of error is not preserved for appellate review because the Commonwealth's Attorney agreed to clarify the remark, and Nall asked for no further curative action.[21] We agree that there is no error for our review. The prosecutor reluctantly agreed to clarify his statement in closing argument that if one juror did not vote to convict, Nall would go free. The prosecutor restated his comment to inform the jury that if they did not agree to convict, the charges would remain but Nall would not go to prison that day. Nall requested no further relief.

## VII. <u>NO CUMULATIVE ERROR</u>.

Since we have not found significant error in the trial, we cannot agree with Nall that there was cumulative error that warrants reversal of his convictions. As a result, and for all the foregoing reasons, we affirm the judgment.

All sitting. All concur.

---

[21] *Citing* <u>Johnson v. Commonwealth</u>, 105 S.W.3d 430, 441 (Ky. 2003).

16

COUNSEL FOR APPELLANT:

Dwight Preston
Shane Alan Young
Lewis & Preston
102 West Dixie Avenue
Elizabethtown, Kentucky 42701-1498


COUNSEL FOR APPELLEE:

Jack Conway
Attorney General of Kentucky

James Coleman
Assistant Attorney General
Office of Criminal Appeals
1024 Capital Center Drive
Suite 200
Frankfort, Kentucky 40601-8204