RENDERED:  FEBRUARY 4, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1178-WC
AND
NO. 2021-CA-1276-WX


JAMES VIARS (DECEASED)
ESTATE; BETTY STEWART,
ADMINISTRATRIX;
MANDI EMERSON AS NEXT FRIEND
OF ALEXANDER VIARS, A MINOR;
MANDI EMERSON AS NEXT FRIEND
OF GIANNH VIARS, A MINOR;
AND ANGELLA CAMPBELL AS
NEXT FRIEND OF ELIAS
HAWK YOUNG, A MINOR                    APPELLANTS/CROSS-APPELLEES


                    PETITION/CROSS-PETITION FOR REVIEW OF A DECISION
v.                  OF THE WORKERS' COMPENSATION BOARD
                    ACTION NO. WC-18-50746


CUMBERLAND MILLWORK
& SUPPLY, INC.;
HONORABLE GRANT
S. ROARK, ADMINISTRATIVE
LAW JUDGE; AND WORKERS'
COMPENSATION BOARD                    APPELLEES/CROSS-APPELLANTS

** ** ** ** **

BEFORE:  LAMBERT, MAZE, AND L. THOMPSON, JUDGES.

THOMPSON, L., JUDGE:  The Estate of James Viars, *et al*., appeal from a decision of the Workers' Compensation Board (hereinafter "Board") which affirmed in part, reversed in part, and remanded a decision of an administrative law judge (hereinafter "ALJ").  Appellants argue that a statute which, under certain circumstances, denies workers' compensation benefits to an employee who is injured while intoxicated does not apply, contrary to the Board's decision.  Cumberland Millwork & Supply, Inc. (hereinafter "Cumberland") cross-appeals and argues that a blood test is not required to prove a person's intoxication and that any workers' compensation benefits awarded should be reduced due to James Viars' not utilizing safety equipment.  We agree with Appellant that the statute at issue does not apply here.  We also agree with Cumberland that the testing of a person's blood is not required, but also conclude that there was insufficient evidence presented that Mr. Viars was intoxicated.  We affirm in part, reverse in part, and remand.

# FACTS AND PROCEDURAL HISTORY

Mr. Viars was employed by Cumberland. On December 21, 2018, Mr. Viars was making deliveries for Cumberland when he was involved in a motor vehicle accident that resulted in his death. It is undisputed that his death occurred during the course and scope of his employment. Mr. Viars did not die immediately and was in the hospital for a number of days. During his hospitalization, amphetamines, methamphetamines, and cannabinoids were found in his urine.

Mr. Viars' estate and dependents sought workers' compensation benefits after his death. Cumberland indicated it would defend against the benefits by alleging the accident was caused by Mr. Viars' intoxication. Cumberland also alleged that Mr. Viars was not utilizing the required safety equipment, a seatbelt, when the accident occurred.

The primary issue in this appeal revolves around the interpretation of Kentucky Revised Statutes (KRS) 342.610. The current version of this statute, which was in effect at the time of Mr. Viars' accident, states in relevant part:

> (1) Every employer subject to this chapter shall be liable for compensation for injury, occupational disease, or death without regard to fault as a cause of the injury, occupational disease, or death.
>
> . . .
>
> (3) Liability for compensation shall not apply to injury, occupational disease, or death to the employee if the

employee willfully intended to injure or kill himself, herself, or another.

(4) If an employee voluntarily introduced an illegal, nonprescribed substance or substances or a prescribed substance or substances in amounts in excess of prescribed amounts into his or her body detected in the blood, as measured by a scientifically reliable test, that could cause a disturbance of mental or physical capacities, it shall be presumed that the illegal, nonprescribed substance or substances or the prescribed substance or substances in amounts in excess of prescribed amounts caused the injury, occupational disease, or death of the employee and liability for compensation shall not apply to the injury, occupational disease, or death to the employee.

The previous version of this statute is also relevant for our purposes and stated in relevant part: "(3) Liability for compensation shall not apply where injury, occupational disease, or death to the employee was proximately caused primarily by voluntary intoxication as defined in KRS 501.010, or by his or her willful intention to injure or kill himself, herself, or another." KRS 342.610(3) (amended 2018). Voluntary intoxication is defined as "intoxication caused by substances which the defendant knowingly introduces into his body, the tendency of which to cause intoxication he knows or ought to know, unless he introduces them pursuant to medical advice or under such duress as would afford a defense to a charge of crime." KRS 501.010(4).

With these statutes in mind, we now turn to the evidence presented to the ALJ.  It is undisputed that there was no test on Mr. Viars' blood during his hospitalization.  Appellants' expert, Michael Ward,[1] testified that the detection of drugs in Mr. Viars' urine did not indicate that the drugs were in Mr. Viars' blood at the time of the accident.  He testified that the only way to detect whether drugs were in Mr. Viars' blood at the time of the accident, and in what amounts, would have been to test his blood.  He testified that urine tests are not good for determining a person's impairment from drugs.  Mr. Ward's opinion was that a person's urine could test positive for drugs, but that the drugs may have already been cleared from the blood.

Cumberland presented the testimony of its expert, Dr. Daniel Wolens.[2]  He testified that Mr. Viars' urine was tested three times over a forty-eight-hour period.  It was his opinion that since the drugs were present in the urine over this period of time, Mr. Viars had to ingest the drugs close to the time of the accident.

---

[1] Mr. Ward is a forensic toxicologist who is an adjunct professor at Eastern Kentucky University, an assistant professor at the University of Kentucky, and owns a consulting firm, Toxchem, Inc.

[2] Dr. Wolens is a doctor with Kentuckiana Occupational Health Associates, Ltd.  He is board certified in preventative medicine, a member of the American Board of Quality Assurance and Utilization Review Physicians, and a member of the American Board of Independent Medical Examiners.

The primary contested issue in this case was the application of KRS 342.610(4). Cumberland maintained Mr. Viars was intoxicated at the time of the accident; therefore, he was not entitled to benefits. Appellants argued that since Mr. Viars' blood was not tested, KRS 342.610(4) does not apply. The ALJ found that Mr. Ward's testimony was more persuasive and held that Mr. Viars' blood was not "scientifically, reliably tested to determine the presence of illegal substances at levels which would cause a disturbance of mental or physical capacities." The ALJ held Cumberland did not carry its burden of establishing the intoxication affirmative defense; therefore, the benefits claim was not barred by KRS 342.610(4).

Another issue addressed was the application of KRS 342.165(1). KRS 342.165(1) states:

> If an accident is caused in any degree by the intentional failure of the employer to comply with any specific statute or lawful administrative regulation made thereunder, communicated to the employer and relative to installation or maintenance of safety appliances or methods, the compensation for which the employer would otherwise have been liable under this chapter shall be increased thirty percent (30%) in the amount of each payment. If an accident is caused in any degree by the intentional failure of the employee to use any safety appliance furnished by the employer or to obey any lawful and reasonable order or administrative regulation of the commissioner or the employer for the safety of employees or the public, the compensation for which the employer would otherwise have been liable under this

chapter shall be decreased fifteen percent (15%) in the amount of each payment.

Cumberland argued that there was evidence that Mr. Viars was not wearing his seatbelt when the accident occurred; therefore, because he was not wearing this safety device, his benefits should be reduced by fifteen percent.

The ALJ held that while there was no evidence to suggest Appellant was wearing a seatbelt at the time of the accident, there was also no evidence that the seatbelt was functioning properly at the time of the accident. In other words, there was no evidence whether or not Mr. Viars intentionally did not wear the seatbelt. The ALJ also held that KRS 342.165(1) requires that the workplace accident be caused by the intentional failure of the employee to use the safety equipment. In this case, there was no evidence that the accident was caused by Mr. Viars' failure to wear a seatbelt; therefore, KRS 342.165(1) did not apply.

The ALJ entered an interlocutory order regarding the applicability of KRS 342.610(4) and KRS 342.165(1), and additional discovery and proceedings occurred. During this time, Cumberland argued that it could still prevent the Appellants from recovering benefits because of Mr. Viars' intoxication. Cumberland claimed that even though there was no blood test showing the presence of drugs in Mr. Viars' blood at the time of the accident, there was still evidence that he was intoxicated. Cumberland maintained that while it was not entitled to the KRS 342.610(4) presumption that the accident was caused by Mr.

Viars' drug use, KRS 342.610(4) still allowed Cumberland to present an intoxication defense.

In a final order and award, the ALJ concluded that the previous version of KRS 342.610 would allow Cumberland to continue with the intoxication defense, but the version in effect at the time did not. The ALJ held that because the Legislature amended the statute to require a scientifically reliable blood test to utilize the intoxication defense, without said blood test showing the presence of drugs in the blood at levels that could cause intoxication, the defense was not available. The ALJ also reiterated that KRS 342.165 did not apply and that the award would not be reduced by fifteen percent. The ALJ awarded death benefits and medical expenses.

Cumberland then appealed to the Board. The Board affirmed the ALJ's conclusion that a test of an employee's blood was required before the presumption in KRS 342.610(4) would apply. The Board disagreed, however, with the ALJ's decision that Cumberland could not still attempt an intoxication defense. The Board held that there was nothing in KRS 342.610(4)

> preventing the ALJ, after making a determination that the presumption does not apply, from reviewing the evidence in the record and making a determination as to whether [Viars] was intoxicated and, if so, whether that intoxication was the primary causal factor of his accident and fatal injuries. . . . In other words, there is nothing within KRS 342.610(4) that imposes an absolute ban

upon the ALJ considering other evidence in the record in the event the statutory presumption is not applicable.

The Board vacated the award of benefits and remanded the case to the ALJ to review the evidence and determine whether Viars was intoxicated and if that intoxication was the primary factor in causing the accident. Finally, the Board agreed with the ALJ that the fifteen percent reduction found in KRS 342.165(1) did not apply. This appeal and cross-appeal followed.

## ANALYSIS

We will first address the issues raised in Cumberland's cross-appeal. Cumberland's first argument is that the Board erred in determining that the presumption set forth in KRS 342.610(4) requires a test performed on the blood. The Board interpreted the phrase "detected in the blood, as measured by a scientifically reliable test" as requiring a test on the actual blood itself. Cumberland argues that any test that can establish the presence of intoxicating substances in the blood would be valid and that a test of the blood is not required.

"The function of further review of the [Board] in the Court of Appeals is to correct the Board only where [the] Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *Western Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992). As the proper interpretation of a statute is purely a legal issue, our review is *de novo*. *Commonwealth v. Long*,

-9-

118 S.W.3d 178, 181 (Ky. App. 2003) (citations omitted).  When engaging in

statutory interpretation,

> our main goal is "to give effect to the intent of the
> General Assembly."  The clearest indicator of that intent
> is the "language the General Assembly chose, either as
> defined by the General Assembly or as generally
> understood in the context of the matter under
> consideration."  And "[w]here the words used in a statute
> are clear and unambiguous and express the legislative
> intent, there is no room for construction and the statute
> must be accepted as written."

*Bell v. Bell*, 423 S.W.3d 219, 223 (Ky. 2014) (footnotes and citations omitted).

"We must interpret statutes as written, without adding any language to the

statute[.]"  *Commonwealth v. Chestnut*, 250 S.W.3d 655, 661 (Ky. 2008) (footnote

and citations omitted).

We agree with Cumberland's argument.  The statute requires that a

"scientifically reliable test" be used to detect "an illegal, nonprescribed substance

or substances or a prescribed substance or substances in amounts in excess of

prescribed amounts" in the blood of an injured employee.  The language does not

require a test of the blood.  We believe it is possible to determine if an intoxicant is

in a person's blood without testing the blood itself.  For example, a breathalyzer

test is a scientifically reliable test used to determine the presence of alcohol in a

person's blood and the amount of alcohol in a person's blood; however, it does not

test the blood itself.[3]  A test like this would satisfy the requirement set forth in

KRS 342.610(4).

      While we agree with Cumberland's interpretation of the statute, we

still affirm the decision that the presumption does not apply in this case.[4]  Here,

Cumberland and Appellants each presented an expert who testified regarding the

efficacy of the urine testing performed on Mr. Viars.  The ALJ believed Mr. Ward,

Appellants' expert, was more credible in his opinion that one cannot determine if

illegal substances were present in Mr. Viars' blood at the time of the accident by

examining his urine tests.

> KRS 342.285 designates the ALJ as the finder of
> fact. *Paramount Foods, Inc. v. Burkhardt*, 695 S.W.2d
> 418 (Ky. 1985), explains that the fact-finder has the sole
> authority to judge the weight, credibility, substance, and
> inferences to be drawn from the evidence. *Special Fund
> v. Francis*, 708 S.W.2d 641, 643 (Ky. 1986), explains
> that a finding that favors the party with the burden of
> proof may not be disturbed if it is supported by
> substantial evidence and, therefore, is reasonable.

*AK Steel Corp. v. Adkins*, 253 S.W.3d 59, 64 (Ky. 2008).  "Substantial evidence

means evidence of substance and relevant consequence having the fitness to induce

---

[3] We note that KRS 342.610(4) seems to omit alcohol.  The statute mentions illegal substances and prescribed substances used in excess of the prescribed amount.  Alcohol is neither illegal nor prescribed.

[4] This Court may affirm on other grounds.  *Commonwealth Natural Resources and Environment Protection Cabinet v. Neace*, 14 S.W.3d 15, 20 (Ky. 2000); *O'Neal v. O'Neal*, 122 S.W.3d 588, 589 n.2 (Ky. App. 2002).

conviction in the minds of reasonable men." *Smyzer v. B. F. Goodrich Chemical Co.*, 474 S.W.2d 367, 369 (Ky. 1971) (citation omitted). "Although a party may note evidence which would have supported a conclusion contrary to the ALJ's decision, such evidence is not an adequate basis for reversal on appeal." *Whittaker v. Rowland*, 998 S.W.2d 479, 482 (Ky. 1999) (citation omitted).

Here, Cumberland had the burden of proving there were illegal substances in Mr. Viars' blood at the time of the accident, but they failed. Appellants' expert was deemed more credible and the ALJ believe the urine test could not reliably determine if there were illegal substances in Mr. Viars' blood at the time of the accident. Cumberland's evidence in this case was not so overwhelming as to compel a finding in its favor; therefore, we affirm the judgment of the ALJ and Board that the presumption found in KRS 342.610(4) does not apply. *See Snawder v. Stice*, 576 S.W.2d 276, 279-80 (Ky. App. 1979) (citations omitted).

Cumberland's other argument on appeal is that the Board erred in determining that the fifteen percent reduction in benefits found in KRS 342.165(1) did not apply. As previously mentioned, KRS 342.165(1) states that any award should be reduced by fifteen percent "[i]f an accident is caused in any degree by the intentional failure of the employee to use any safety appliance furnished by the employer or to obey any lawful and reasonable order or administrative regulation

-12-

of the commissioner or the employer for the safety of employees or the public[.]" Cumberland claims that because Mr. Viars was not wearing his seatbelt at the time of the accident, KRS 342.165(1) should apply.

We disagree. KRS 342.165(1) states that the fifteen percent reduction applies when an accident was "**caused** in any degree by the intentional failure" of an employee to wear a safety device. (Emphasis added.) Here, there was no evidence that the motor vehicle accident was in any way caused by Mr. Viars not wearing a seatbelt. We affirm as to this issue.

We now move on to Appellants' appeal. Appellants argue that the Board erred in determining that Cumberland can still use an intoxication defense even though they did not carry the burden of proving there was an illegal substance in Mr. Viars' blood at the time of the accident. The ALJ held that KRS 342.610(4) did not allow an intoxication defense without a reliable test on Mr. Viars' blood. The Board reversed the ALJ and held that without the blood test, Cumberland was not entitled to the presumption that the illegal substances caused the work injury; however, Cumberland could still use other evidence that Mr. Viars was intoxicated in order to prevent the award of benefits. Appellants argue that the way the statute is written precludes any intoxication defense without evidence that there were illegal substances in Mr. Viars' blood at the time of the accident.

KRS 342.610(1) states that workers' compensation benefits are to be awarded regardless of fault. "Since its inception, a premise of the Act has been that a worker's negligence will not defeat a claim for a resulting injury." *Campbell v. City of Booneville*, 85 S.W.3d 603, 606 (Ky. 2002). The previous version of KRS 342.610 stated that an employee was entitled to benefits unless the employee's injury "was proximately caused primarily by voluntary intoxication[.]" KRS 342.610(3) (amended 2018). In other words, the previous version of KRS 342.610 stated that employees were entitled to benefits, regardless of fault, unless they were voluntarily intoxicated. It is without question that had the old version of KRS 342.610 still been in effect when Mr. Viars was injured, Cumberland would have an intoxication defense.

KRS 342.610 was amended in 2018 and the voluntary intoxication language was removed. In addition, the current version of KRS 342.610(4) was introduced. Now KRS 342.610 states that an employee is entitled to benefits, regardless of fault, but if an employer can prove that the employee had illegal substances or prescribed substances in excess of the prescribed amount in his or her blood at the time of the injury, it will be presumed that the injury was caused by the illegal or prescribed substances.

"The workers' compensation system is controlled by the state and is governed by legislative enactments." *Dowell v. Matthews Contracting*, 627

S.W.3d 890, 896 (Ky. 2021). The system "is a statutory scheme that may be amended as the General Assembly chooses, provided it fits within our constitutional framework." *Id.* at 894-95.

> When a statute is amended, the presumption is that the [L]egislature intended to change the law. Our Supreme Court has held that "[i]n determining legislative intent certain presumptions are indulged. One of these is that . . . where a clause in an old enactment is omitted from the new one, it is to be inferred that the Legislature intended that the omitted clause should no longer be the law." Likewise:
>
> > [w]here a statute is amended or re-enacted in different language, it will not be presumed that the difference between the two statutes was due to oversight or inadvertence on the part of the Legislature. On the contrary, it will be presumed that the language was intentionally changed for the purpose of effecting a change in the law itself.

*City of Somerset v. Bell*, 156 S.W.3d 321, 326 (Ky. App. 2005) (footnotes and citations omitted).

The Board held that nothing in the current version of KRS 342.610(4) banned an employer from raising an intoxication defense even when it did not produce a scientifically reliable test showing illegal substances were in an employee's blood. The Board also cited to three cases to support its decision: *Campbell*, *supra*; *Wilson v. Wizor*, 544 S.W.2d 231 (Ky. 1976); and *Ford Motor Company v. Smith*, 283 Ky. 795, 143 S.W.2d 507 (1940).

-15-

We believe the Board erred in its interpretation. The cases cited by the Board dealt with previous versions of KRS 342.610 and those versions all contained the voluntary intoxication language. The Board's reliance on these cases was misplaced as they dealt with old versions of the statute and not the current version which does not contain the voluntary intoxication language.

In addition, while the Board is correct that nothing in KRS 342.610 specifically states that an employer is banned from raising an employee's intoxication even when they do not provide a scientifically reliable blood test, there is nothing in the statute that allows it either. The previous version of KRS 342.610 allowed an employer to raise an intoxication defense without restriction. The current version requires a test showing illegal or prescribed substances in the blood and has no general provision allowing for an intoxication defense. The Legislature specifically removed the voluntary intoxication language and created a statute that requires a test showing illegal or prescribed substances in the blood. We believe the language in the current version of the statute requires that the substances be found in the employee's blood before an intoxication defense can be raised.

Had the Legislature kept the voluntary intoxication language of the old version of the statute and also included the new language found in KRS 342.610(4), Cumberland would still have a viable intoxication defense. Cumberland would not be entitled to a presumption that the drugs caused the

injury; however, it would still be able to introduce evidence that Mr. Viars was under the influence and try to persuade the ALJ that this was the proximate and primary cause of the injury.

Workers' compensation is a creature of statute and is controlled by the enactments of the Legislature. As the statute is currently written, the only avenue for an intoxication defense is when there is a test showing illegal or prescribed substances in the blood.

## CONCLUSION

Based on the foregoing, we affirm in part, reverse in part, and remand. On remand, the Board will order that Cumberland is not entitled to raise an intoxication defense and will reinstate the workers' compensation award if it finds said award was supported by the evidence.

ALL CONCUR.

| BRIEFS FOR APPELLANTS/CROSS-APPELLEES: | BRIEF FOR APPELLEE/CROSS-APPELLANT CUMBERLAND MILLWORK & SUPPLY INC.: |
|---|---|
| Mark D. Knight<br>Somerset, Kentucky | Guillermo A. Carlos<br>Lexington, Kentucky |